

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

IN THE INTEREST OF: A.R.K., )
)
              **Appellant,** ) **WD85237**
**v.** )
) **OPINION FILED:**
**JUVENILE OFFICER,** )
) **March 28, 2023**
              **Respondent.** )

**Appeal from the Circuit Court of Pettis County, Missouri**
**Honorable Jeff A. Mittelhauser, Judge**

**Before Division One: Anthony Rex Gabbert, Presiding Judge,**
**W. Douglas Thomson, Judge and Janet Sutton, Judge**

A.R.K. appeals the Pettis County Circuit Court (juvenile court)[1] order dismissing the juvenile petition against him and certifying him to be prosecuted as an adult on eight separate offenses under the general law. A.R.K. appeals this order, arguing the juvenile court abused its discretion because the totality of the circumstances showed that A.R.K. was a proper subject to be treated in the juvenile justice system. Finding no abuse of discretion, we affirm the juvenile court's order.[2]

---

[1] We use the term "juvenile court," because the term "is defined in chapter 211 to refer to the 'court' with statutory authority to adjudicate criminal charges against a 'child'. . . ." *J.N.W. v. Juv. Officer*, 643 S.W.3d 618, 623 n.1 (Mo. App. W.D. 2022).

[2] "A juvenile may appeal from a final judgment in the juvenile division, including the juvenile division's decision to dismiss a case from its jurisdiction following a section

**Factual and Procedural Background**

In December 2021, the Juvenile Officer filed a petition in the juvenile court alleging that A.R.K., who was then sixteen years old, was in need of care and treatment based on eight allegations arising from events occurring on December 2 and 10, 2021. The petition alleged that on December 2, A.R.K., acting in concert with others, committed the delinquency offenses of misdemeanor property damage, second-degree burglary, and felony stealing. These delinquency offenses arose after A.R.K. and two other juveniles allegedly kicked in a door and unlawfully entered the home of T.S. and his father, N.S., and then stole property from their home including medical marijuana.

The petition also alleged that on December 10, A.R.K., again acting in concert with others, committed second-degree murder, first-degree burglary, attempted first-degree robbery, first-degree assault, and armed criminal action. These delinquency offenses arose after A.R.K. and the same two juveniles allegedly returned to the home of T.S. and N.S. eight days later. At night, A.R.K. and two other juveniles allegedly broke into the home again to take more property, during which one of the juveniles fatally shot T.S. and another beat N.S. in the head with a firearm.

Soon after filing the petition, the Juvenile Officer moved to dismiss the petition and to prosecute A.R.K. under the general law, certifying A.R.K. as an adult. The Juvenile Officer filed this motion as required for juveniles facing the delinquency offense of second-degree murder

211.071 hearing." *D.E.G. v. Juv. Officer of Jackson Cnty.*, 601 S.W.3d 212, 219 (Mo. banc 2020). "[A]n 'order' that is signed by the judge, and that releases and discharges a juvenile from the juvenile court's jurisdiction, is final and appealable, even though it is not denominated a 'judgment.'" *J.N.W.*, 643 S.W.3d at 628. Here, the juvenile court's order was not denominated a "judgment," but because it follows a 211.071 hearing and the order discharged A.R.K. from the juvenile court's jurisdiction, the order is final for purposes of appeal.

2

under section 211.071.1.[3]  A.R.K. responded with his suggestions in opposition to being certified as an adult.

On January 5, 2022, the Juvenile Officer filed a written report as required by section 211.071.6 summarizing information relevant to determining whether to certify A.R.K. as an adult and including further factual background for the court.  The Juvenile Officer's report added that on December 8, 2021, A.R.K. and the two other juveniles allegedly also attempted to burglarize the same home, but were scared off by noises within the home and feared that T.S. was armed.  Then, the report asserted, "Given the nature and seriousness of the juvenile's conduct and the circumstances of the offenses, there are no services available to the Juvenile Office that can appropriately protect the community from [A.R.K.]'s likely future conduct."

The juvenile court held the statutorily required certification hearing on January 10, 2022.  At hearing, the juvenile court heard testimony from the Juvenile Officer, a Missouri Division of Youth Services (DYS) administrator, and both A.R.K.'s natural mother and father.

The Juvenile Officer testified about A.R.K.'s relationship to victim T.S. as co-workers and friends, about A.R.K's knowledge of T.S.'s medical marijuana card, about A.R.K.'s

---

[3]  Unless otherwise noted, all statutory citations refer to the Revised Statutes of Missouri 2016, as supplemented.  Section 211.071.1 states, in relevant part:

> If a petition alleges that a child between the ages of twelve and eighteen has committed an offense which would be considered a felony if committed by an adult, the court *may*, upon its own motion or upon motion by the juvenile officer, the child or the child's custodian, order a hearing and may, in its discretion, dismiss the petition and such child may be transferred to the court of general jurisdiction and prosecuted under the general law; except that if a petition alleges that any child has committed an offense which would be considered . . . second degree murder under section 565.021 . . . the court *shall* order a hearing, and may in its discretion, dismiss the petition and transfer the child to a court of general jurisdiction for prosecution under the general law."  (Emphasis added).

involvement with the two other juveniles in December, and about A.R.K.'s past history with DYS, his family, and school. The DYS administrator testified about juvenile services that could be offered to A.R.K.

A.R.K.'s mother testified about A.R.K.'s poor mental well-being following the deaths of his best friend, cousin, and grandmother. His mother testified about A.R.K.'s relationship with the other two juveniles, his past delinquent activity, his lack of maturity, and his school troubles. A.R.K.'s father testified about A.R.K.'s general behavioral issues.

On February 23, 2022, the juvenile court issued its order dismissing the petition to allow A.R.K. to be prosecuted as an adult under the general law. The juvenile court's order considered and made detailed findings weighing the ten factors in section 211.071.6. In addition to assessing each of the ten factors, the juvenile court found:

> Considering the seriousness of the offenses charged, the need to protect the community, the alleged viciousness, force and violence, the fact that the most serious offenses alleged involved crimes against persons, and the fact that one victim died and another was seriously injured, the court finds that [A.R.K.] is not a proper subject to be dealt with under the juvenile code.

A.R.K. appeals.

## Legal Analysis

In his sole point on appeal, A.R.K. alleges that the juvenile court abused its discretion by dismissing the petition and certifying A.R.K. to be prosecuted as an adult under the general law because the totality of the circumstances showed that A.R.K. was a proper subject to be treated in the juvenile justice system. A.R.K. focuses his argument on four of the factors to be considered by the court and claims that (1) A.R.K. himself did not act violently, (2) A.R.K. did not have a pattern of escalating or repetitive conduct, (3) A.R.K. was not sophisticated or mature, and (4) the evidence showed a "reasonable likelihood" A.R.K. could be rehabilitated in the

4

juvenile justice system. Thus, A.R.K. contends that the juvenile court should not have certified him as an adult. [4]

"[A]ppellate review of a juvenile court's decision to terminate jurisdiction as to a youthful offender is limited to a determination of whether in the totality of the circumstances the court abused its discretion." *J.N.W. v. Juv. Officer*, 643 S.W.3d 618, 631 (Mo. App. W.D. 2022). "A juvenile court abuses its discretion if its 'ruling is clearly against the logic of the circumstances before it and is so unreasonable and arbitrary as to shock the sense of justice and indicates a lack of judicial consideration.'" *J.N.W.*, 643 S.W.3d at 631 (quoting *In re T.M.L.*, 615 S.W.3d 100, 102 (Mo. App. E.D. 2020)). "In reviewing a juvenile court's determination for an abuse of discretion, we will not reweigh the evidence nor determine the reliability or credibility of the witnesses." *Id.*

"Section 211.071 sets out the process for certification of a juvenile for trial as an adult." *M.T. v. M.T.*, 658 S.W.3d 125, 131 (Mo. App. S.D. 2022); *see* § 211.071. When a certification hearing is ordered, the statute requires:

> A written report shall be prepared . . . developing fully all available information relevant to the criteria which shall be considered by the court in determining whether the child is a proper subject to be dealt with under the provisions of [chapter 211] and whether there are reasonable prospects of rehabilitation within the juvenile justice system.

§ 211.071.6. These criteria include ten non-exhaustive factors that the juvenile court may consider, namely:

> (1) The seriousness of the offense alleged and whether the protection of the community requires transfer to the court of general jurisdiction;

---

[4] We note that while A.R.K. argues in his point relied on that the juvenile court abused its discretion in determining that A.R.K. engaged in a pattern of escalating or repetitive conduct and in determining whether A.R.K. was sufficiently mature, A.R.K. does not raise abuse of discretion at all in either argument on these factors. Rather, A.R.K. merely states that the court erroneously weighed these factors.

5

(2) Whether the offense alleged involved viciousness, force and violence;

(3) Whether the offense alleged was against persons or property with greater weight being given to the offense against persons, especially if personal injury resulted;

(4) Whether the offense alleged is a part of a repetitive pattern of offenses which indicates that the child may be beyond rehabilitation under the juvenile code;

(5) The record and history of the child, including experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions and other placements;

(6) The sophistication and maturity of the child as determined by consideration of his or her home and environmental situation, emotional condition and pattern of living;

(7) The age of the child;

(8) The program and facilities available to the juvenile court in considering disposition;

(9) Whether or not the child can benefit from the treatment or rehabilitative programs available to the juvenile court; and

(10) Racial disparity in certification.

§ 211.071.6; *J.N.W.*, 643 S.W.3d at 631–32.

"In assessing the criteria set forth in section 211.071.6, 'the juvenile court is entitled to significant discretion in reaching its certification determination.'" *C.L.F. v. Juv. Officer*, 657 S.W.3d 273, 279 (Mo. App. W.D. 2022) (quoting *Interest of T.D.S.*, 643 S.W.3d 510, 519 (Mo. App. E.D. 2021)). Likewise, "[t]he certifying court need not give equal weight to each of the listed factors, nor is it required to make an express finding on each one." *Id.*

## I.     A.R.K.'s Alleged Lack of Personal Violence

The first two factors juvenile courts consider under section 211.071.6 include (1) the seriousness of the offense and whether community protection requires certification and (2) whether the offense alleged involved viciousness, force and violence. § 211.071. The juvenile court may rely on the alleged crime's serious nature as "the dominant criterion among the ten factors." *See State v. Thomas*, 70 S.W.3d 496, 504 (Mo. App. E.D. 2002).

A.R.K. argues that the juvenile court gave improper weight to these factors "involving the seriousness of the allegations, and the degree of violence involved in the allegations."

6

A.R.K. claims "the [juvenile] court improperly considered the acts of others—rather than A.R.K.'s alleged culpability—in determining the seriousness of the allegations." A.R.K. asserts that "the legislature did not impute the criminal-law concept of transferred intent" under the juvenile code, and thus the juvenile court improperly weighed these factors by considering the acts of the other two juveniles. We disagree.

The juvenile court properly considered these two factors in its order certifying A.R.K. to be prosecuted as an adult. First, the juvenile court found the seriousness of the alleged offense weighed heavily in favor of certification. The juvenile court reasoned that the alleged offenses were severe enough to warrant certification because the allegation of second-degree murder against A.R.K. was punishable by up to life imprisonment. The juvenile court continued, "The only crime carrying a greater penalty is murder in the first degree." That the petition also alleged class B felonies also weighed "heavily in favor of certification." Additionally, although not required, the juvenile court also concluded that A.R.K. needed to be certified to protect the community.

Second, the juvenile court found that "the offenses alleged to have occurred December 10 involved viciousness, force and violence through the intentional shooting of one victim and the attempt to cause serious physical injury to a second victim by striking him in the head with a firearm." In the order's conclusion, the juvenile court emphasized both of these factors, writing:

> Considering the seriousness of the offenses charged, the need to protect the community, the alleged use of viciousness, force and violence, the fact that the most serious offenses alleged involved crimes against persons, and the fact that one victim died and another was seriously injured, the court finds that [A.R.K.] is not a proper subject to be dealt with under the juvenile code.

We find that the juvenile court did not abuse its discretion in weighing these two factors heavily. The juvenile court is not required to give all section 211.071.6 factors equal weight. Likewise, we will not reweigh the juvenile court's evidence because the inquiry would be

7

beyond our scope of review. Based on these findings by the juvenile court, we find no indication

that the juvenile court's ruling is clearly against the logic of the circumstances.

Nor do we find that this decision weighing the seriousness and degree of violence of

A.R.K.'s allegations is so unreasonable and arbitrary as to shock the sense of justice or indicate a

lack of judicial consideration. Rather, we find the contrary.

Showing careful consideration, the juvenile court preempted A.R.K.'s argument that the

juvenile court improperly considered the acts of others contrary to the juvenile code. In its order,

the juvenile court directly addressed what are now A.R.K.'s allegations, finding:

> [T]he attorneys for the juvenile and his parents have argued that the juvenile's
> involvement in the alleged homicide was less than that of his two co-actors. This
> is accurate but perhaps superficially. Again, this is the most serious of
> allegations—intentional conduct leading to the loss of life. Felony murder does
> not require proof that anyone went to the victims' home with the intent to kill
> someone. It requires proof that someone was killed in the course of a felony. . . .
> It is also impossible to disregard the fact that this juvenile was the link with the
> victims. He knew the victims. He had been to their home prior to December 2.
> He knew one of the victims legally possessed and used marijuana, which was a
> target of the burglary and theft. It is impossible to know if the two juveniles who
> possessed the guns would have carried out the crime had [A.R.K.] not participated
> on December 10.

The juvenile court directly addressed A.R.K.'s unique allegations of involvement in the

burglary, theft, and murder, not those of the two other juveniles who accompanied A.R.K. on

December 2 and 10. The juvenile court made clear that it certified A.R.K. based on his own

actions—not because A.R.K. was at the wrong place at the wrong time.

Likewise, A.R.K. wrongly asserts that the juvenile court erred because the juvenile code

does not impute the concept of criminal "transferred intent." A.R.K.'s argument ignores the fact

that section 211.071.1 requires that the Juvenile Officer file a motion to dismiss a juvenile's

petition and seek prosecution under the general law "if a petition alleges that any child has

committed an offense which would be considered . . . second degree murder under section

8

565.021 . . . ."[5] § 211.071.1. Second-degree murder, which includes felony murder, is specifically considered by section 565.021. Second-degree murder under section 565.021.1(2) holds a person responsible for the death of another if that death occurs during the commission of another felony without the specific intent to harm the deceased. § 565.21.1(2).

Additionally, the juvenile code clearly allows for accomplice liability. As stated in *S.B.A.*:

> "A person is deemed criminally responsible for the conduct of others when 'with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.'" Pursuant to the concept of accomplice liability, all persons who act in concert to commit an offense are equally responsible for the act. In addition, "[a] [person] who embarks upon a course of criminal conduct with others is responsible for those [offenses] which he could reasonably anticipate would be part of that conduct."

*In re S.B.A.*, 530 S.W.3d 615, 624 (Mo. App. E.D. 2017) (citations omitted). Likewise, "To support an adjudication based on accomplice liability, the juvenile officer need only show that the accused associated himself with the venture or participated in the offense in some manner; there is no need to show the accused personally committed every element of the [offense]." *Id.* Here, the Juvenile Officer's petition alleged that A.R.K. "committed an act which would, if committed by an adult, constitute a Class A Felony of Murder in the Second Degree, a violation of §565.021 a violation of §565.021 RSMo., in that the juvenile, *in concert with others*, knowingly caused the death of T.S. . . . ." (Emphasis added).

---

[5] Section 565.021 states, in relevant part:

> 1. A person commits the offense of murder in the second degree if he or she:
>
> (2) Commits or attempts to commit any felony, and, in the perpetration or the attempted perpetration of such felony or in the flight from the perpetration or attempted perpetration of such felony, another person is killed as a result of the perpetration or attempted perpetration of such felony or immediate flight from the perpetration of such felony or attempted perpetration of such felony.

Thus, the juvenile court did not abuse its discretion in weighing the seriousness of the offenses and the degree of violence involved in the commission of those offenses.

## II. A.R.K.'s Alleged Pattern of Escalating or Repetitive Conduct

Under section 211.071.6, juvenile courts may consider factor four, whether the alleged offense was part of a repetitive pattern of offenses that indicates the juvenile may be beyond rehabilitation under the juvenile code, in assessing whether to certify a juvenile for prosecution as an adult. § 211.071.6(4).

Here, the juvenile court found:

> 4. The offenses alleged were part of a repetitive pattern of offenses which indicates the juvenile may be beyond rehabilitation under the juvenile code. Specifically, it is alleged that on December 2, 2021, the juvenile and others burglarized and stole from the victims, perhaps targeting marijuana possessed by one of the victims. Then, it is alleged that the juvenile was involved in a December 8, 2021[,] plan to burglarize the victims' home a second time, a plan which was not carried out because one or more of the victims was home. And finally, on December 10, 2021, the juvenile and others are alleged to have again gone to the home to steal property, including medical marijuana, this time with dire results.

A.R.K. argues that the juvenile court "erroneously found that A.R.K. was engaging in a repetitive pattern of conduct so serious as to show that A.R.K. was beyond rehabilitation under the juvenile code." A.R.K. argues that the allegations arising from events on December 2 and 10 "are clearly not the 'repetitive pattern offenses' contemplated" by section 211.071.6(4). A.R.K. claims that he "has never been a violent child[,] he had no history of violent or forceful conduct," and was never found delinquent and lacked prior referrals showing an established pattern of high-risk delinquent behaviors.

The juvenile court may freely give weight to the juvenile's repetitive pattern of offenses and the juvenile's record and history as it sees fit. *See C.L.F.*, 657 S.W.3d at 279 ("The certifying court need not give equal weight to each of the listed factors . . . ."). In *M.T. v. M.T.*,

juvenile M.T. argued that the juvenile court abused its discretion in certifying M.T. as an adult because the juvenile court improperly weighed M.T.'s repetitive conduct. *M.T.*, 658 S.W.3d at 132. M.T. argued that the juvenile court should have considered M.T.'s "mental-health problems and lack of structure at home" that exacerbated M.T.'s repeated delinquency issues and disciplinary problems. *Id.* The juvenile court in *M.T.* held:

> The problem with M.T.'s argument is that it is a request for us to reweigh the evidence rather than a demonstration of an abuse of discretion. While we know the juvenile court found this factor in favor of certification, we do not know how much weight it gave this factor given that nine other factors were also found to support certification. Nor is it our job to second guess how much weight the juvenile court should give to each factor.

*Id.* at 132–33.

A.R.K., like M.T., is asking this Court to reweigh the evidence, which we cannot do. This Court will not second-guess the juvenile court's findings of fact based on the statutorily required report and hearing testimony.

Granted, the Juvenile Officer's report stated that A.R.K. "does not have a history with the Juvenile Officer involving weapons or violent offenses against persons." The report also noted that A.R.K. had "no known previous record or history in other courts or jurisdictions within Missouri." The report did state, though, that A.R.K. had a history of stealing over $500 at age eleven, and of being habitually absent from the home and beyond the control of his parents at age sixteen.

The juvenile court, however, had wide discretion in considering factor four. That the juvenile court found that the incidents on December 2, 10, and possibly on December 8, established a repetitive pattern is not clearly against the logic of the circumstances nor so unreasonable and arbitrary as to shock the sense of justice. Thus, the juvenile court did not abuse its discretion in weighing factor four.

11

## III.     A.R.K.'s Sophistication and Maturity

Juvenile courts may consider the sixth factor, looking to "[t]he sophistication and maturity of the child as determined by consideration of his or her home and environmental situation, emotional condition and pattern of living."  § 211.071.6(6).  On this factor, the juvenile court found:

> 6. The sophistication and maturity of the juvenile as determined by consideration of his home and environmental situation, emotional condition and pattern of living are not outside what might be considered normal for those who allegedly engage in serious criminal conduct while a juvenile.  His use of drugs, his disregard for his parents' attempts to keep him at home over the past summer and his withdrawal from school are concerns.

A.R.K. claims that the juvenile court's "finding as to A.R.K.'s sophistication and maturity was unsupported, and was contradicted by the evidence."  A.R.K. argues that "the [juvenile] court did not meaningfully assess A.R.K.'s mental and emotional state" by not considering his depression following his cousin's murder, best friend's fatal car accident, and a grandparent's death.  Thus, A.R.K. contends that "the [juvenile] court erroneously weighed this factor."

While the Juvenile Officer's report does not mention A.R.K. suffering from depression, the report does state under factor six that, "The mother described these 'changes' as coinciding with the juvenile having lost his best friend who was killed in an automobile accident."  Likewise, the Juvenile Officer testified that he believed the crux of the issue that related to A.R.K.'s emotional condition "was the death of his best friend in a motor vehicle wreck."

The juvenile court also heard A.R.K.'s mother testify that A.R.K. was "still depressed from . . . the deaths of his friend, his grandma, [and] his cousin."  A.R.K.'s mother also testified at the hearing about A.R.K.'s emotional condition, stating that after his cousin's death, A.R.K. "seemed more depressed, more distant," and "he wouldn't want to get up out of bed."  A.R.K.'s

12

mother testified that A.R.K. had a psychiatric evaluation and treated once for mental illness. There is nothing in the record on appeal showing A.R.K. was formally diagnosed with any mental illness like depression, nor did A.R.K. state he was diagnosed with depression in his suggestions in opposition to the Juvenile Officer's report where he otherwise raised his mental health concerns.

While A.R.K. alleges that the juvenile court "did not meaningfully assess A.R.K.'s mental and emotional state," once again A.R.K.'s argument asks this Court to reweigh the evidence before the juvenile court, which we cannot do. Nor may we determine the reliability or credibility of the witnesses. The extent to which the juvenile court considered the Juvenile Officer's and A.R.K.'s mother's testimony credible and the extent to which the juvenile court considered evidence of A.R.K.'s maturity are reviewed only for an abuse of discretion. We find the juvenile court did not abuse its discretion in assessing A.R.K.'s sophistication and maturity.

## IV.     The Likelihood That A.R.K. Could be Rehabilitated Within the Juvenile System

Lastly, A.R.K. argues that "the totality of the circumstances show that the [juvenile] court abused its discretion" because the Juvenile Officer's recommendation and the juvenile court's findings "were overwhelmingly based on the allegations in the petition, rather than a careful consideration of A.R.K.'s characteristics and amenability to rehabilitation."

"The ultimate purpose for allowing a juvenile to be tried as an adult is to protect the public in cases where further treatment within the juvenile system would be unavailing." *In re A.D.R.*, 603 S.W.2d 575, 581–82 (Mo. banc 1980). "We defer to the juvenile court's findings regarding the time needed to rehabilitate a juvenile." *T.D.S.*, 643 S.W.3d at 526. The juvenile court found, "Because he has never been to the Division of Youth Services, the juvenile would likely benefit from a commitment there", but also "Whether there remains time for rehabilitation

13

prior to when a DYS commitment must finish is far from certain, considering the conduct alleged." We find the juvenile court did not abuse its discretion in weighing the factor of whether A.R.K. could be rehabilitated within the juvenile system.

For the reasons stated above, we find under the totality of the circumstances that the juvenile court did not abuse its discretion in ordering the juvenile petition dismissed and A.R.K. to be certified to the court of general jurisdiction.

A.R.K.'s sole point on appeal is denied.

## Conclusion

The juvenile court's order is affirmed.

_____
JANET SUTTON, JUDGE

Anthony Rex Gabbert, Presiding Judge and W. Douglas Thomson, Judge concur.